IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:05-CR-026-F-2
No. 5:13-CV-347-F

**Breon Montez Sanders**,

          Petitioner,

v.

**United States of America**,

          Respondent.

**Memorandum & Recommendation**

Petitioner Breon Montez Sanders, proceeding under 28 U.S.C. § 2255, seeks to vacate the 295 month term of imprisonment imposed in connection with his guilty plea to conspiring to distribute and possession with intent to distribute more than 50 grams of cocaine base (crack) and 5 kilograms of cocaine ("Motion to Vacate"). D.E. 112. Sanders argues that he is entitled to relief because (1) *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011), requires the court to re-sentence him without a career offender enhancement; (2) his Motion is timely under § 2255(f)(4) and would be appropriate for equitable tolling; (3) his claim is cognizable on collateral review; and (4) his attorney was ineffective for failing to assert his *Simmons* claim earlier. D.E. 112-2; D.E. 121. The Government asks the court to dismiss Sanders's Motion under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure because (1) it is untimely; (2) equitable tolling does not apply; (3) he voluntarily waived his right to collateral attack; (4) he has procedurally defaulted; (5) his claim is not cognizable; and (6) his attorney rendered effective assistance. D.E. 117, 133.

After reviewing the docket and the arguments of the parties, the court determines that Sanders's Motion to Vacate is untimely because it was filed more than one year from the date his conviction became final and that his other arguments are without merit.

Therefore, the undersigned recommends[1] that the court deny Sanders's Motion to Vacate (D.E. 112) and grant the Government's Motion to Dismiss (D.E. 116).

## I.      Background

In April 2005, Sanders entered a plea of guilty to conspiring to distribute and possession with the intent to distribute more than 50 grams of cocaine base (crack), and 5 kilograms of cocaine, in violation of 21 U.S.C. § 846 ("Count One").  D.E. 30.  In exchange for his agreement to plead guilty to Count One, the Government agreed to dismiss one count of possession with intent to distribute more than 50 grams of cocaine base (crack) and a quantity of cocaine, in violation of 21 U.S.C. § 841(a)(1) ("Count Two"), and one count of aiding another in distributing more than 5 grams of cocaine base (crack), in violation of 21 U.S.C. § 841(a)(1) ("Count Three").  D.E. 1; D.E. 30.  As part of the written plea agreement, Sanders agreed to

> waive knowingly and expressly all rights … to appeal whatever sentence is imposed … reserving only the right to appeal from a sentence in excess of the applicable advisory Guideline range that is established at sentencing, and further to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to 28 U.S.C. § 2255, excepting an appeal or motion based upon grounds of ineffective assistance of counsel or prosecutorial misconduct not known to the Defendant at the time of the Defendant's guilty plea.

 D.E. 30 ¶ 2(c).

The court entered judgment against Sanders on August 17, 2005.  D.E. 39.  Under the Fourth Circuit's decision in *United States v. Harp*, 406 F.3d 242 (4th Cir. 2005), which governed the determination of career offender status at the time of Sanders's sentencing, two of Sanders's

---

[1] The district court referred this matter to the undersigned United States Magistrate Judge for the entry of a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1).

prior state court convictions qualified as convictions of either a crime of violence or a controlled substance offense for federal sentencing purposes.[2]   As such, Sanders received a "career offender" adjustment to his criminal history category.  PSR ¶¶ 38, 62, 65.  This career offender adjustment did not affect Sanders's Criminal History Category because, based on his total criminal history points, the sentencing guideline already established a criminal history category of VI.  *Id.* at ¶¶ 38, 65.  In addition, the career offender adjustment only raised Sanders's offense level by one point because, based on the marijuana equivalency of his offense conduct, the sentencing guideline already recommended an offense level of 36.  *Id.* at ¶¶ 56–64.

Based on Sanders's total offense level of 37 and his criminal history category of VI, Sanders's sentencing guideline range was 360 months to life imprisonment.  *Id.* at ¶ 67.  The court sentenced Sanders to 295 months of imprisonment.  D.E. 39.  Sanders did not appeal his conviction or sentence, so his conviction became final on August 31, 2005, fourteen days after entry of judgment against him.  *See Reddick v. United States*, 2010 WL 5477215 at *2 (E.D.N.C. Dec. 28, 2010); Fed R. App. P. 4(b).

On January 30, 2013, the court issued Standing Order 11-SO-3 appointing the Office of the Federal Public Defender to determine whether Sanders (and inmates like him) was entitled to post-conviction relief pursuant to *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011).  D.E. 108.  Sanders filed his Motion to Vacate with supporting argumentation on May 13, 2013.  D.E. 112.  The Government responded to Sanders's Motion by filing a Motion to Dismiss with supporting argumentation on May 28, 2013.  D.E. 116; D.E. 117.  In response, Sanders filed a Supplemental Memorandum in support of his Motion to Vacate on April 29, 2014.  D.E. 121.

---

[2] According to Sanders's Presentence Report ("PSR"), Sanders was convicted of possession with intent to manufacture, sell, and deliver cocaine and trafficking in cocaine in Wake County, North Carolina, serving as felony convictions of controlled substance offenses for federal sentencing purposes. *See* PSR ¶¶ 26, 29.

After this matter was stayed for a period of time pending the rehearing en banc of the Fourth Circuit's opinion in *Whiteside v. United States*, 578 Fed. App'x 218 (4th Cir. 2014) (granting rehearing en banc in *Whiteside v. United States*, 748 F.3d 541 (4th Cir. 2014)), the Government responded to Sanders's April 29, 2014 Supplemental Memorandum. D.E. 133.

## II.   Analysis

### A.   Standard of Review

A petitioner seeking relief pursuant to 28 U.S.C. § 2255 must show that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the Court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law." *Id.* at § 2255(a). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." *Id.* at § 2255(b). "The Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, to the extent that they are not inconsistent with any statutory provisions, or the [§ 2255 Rules], may be applied to" § 2255 proceedings. Rules Governing § 2255 Proceedings, Rule 12.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N. Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). A complaint states a claim under 12(b)(6) if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative

level." *Twombly*, 550 U.S. at 555. In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, … bare assertions devoid of further factual enhancement [,] … 'unwarranted inferences, unreasonable conclusions, or arguments.'" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (quoting *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n.6 (4th Cir. 2009)).

In the context of a § 2255 motion, "[w]hen the district court denies § 2255 relief without an evidentiary hearing, the nature of the court's ruling is akin to a ruling on a motion for summary judgment." *United States v. Poindexter*, 492 F.3d 263, 267 (4th Cir. 2007). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must then affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact requiring trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue [of fact]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In a § 2255 proceeding, the court must "review the facts in the light most favorable to the § 2255 movant." *Poindexter*, 492 F.3d at 267. Nevertheless, "[p]ermissible inferences must still be within the range of reasonable probability, … and it is the duty of the court to [grant summary judgment] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." *Lovelace*

*v. Sherwin–Williams Co.*, 681 F.2d 230, 241 (4th Cir. 1982) (quoting *Ford Motor Co. v. McDavid*, 259 F.2d 261, 266 (4th Cir. 1958)).

### B.     Timeliness

The Government argues that Sanders's Motion to Vacate should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because he has failed to state a claim upon which relief may be granted.  Specifically, the Government contends that Sanders filed his motion outside the one-year statute of limitations governing § 2255 claims.  D.E. 117 at 12–15; D.E. 133.  Ordinarily, a court will not address an affirmative defense such as the statute of limitations when resolving a 12(b)(6) motion.  *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).  However, it may do so if all of the facts necessary to rule on the affirmative defense "clearly appear on the face of the complaint."  *Id.*  In this case, Sanders's Motion to Vacate contains sufficient information to establish that it was not filed in a timely manner.

Motions brought pursuant to 28 U.S.C. § 2255 are subject to a one-year statute of limitations.  The limitations period runs from the latest of four possible dates:

(1)     the date on which the judgment of conviction becomes final;

(2)     the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3)     the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)     the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Because he did not file a direct appeal, Sanders's judgment became final when his time to appeal expired on August 31, 2005. *See* Fed. R. App. P. 4(b); *Clay v. United States*, 537 U.S. 522, 524–25 (2003) (holding that a conviction becomes final after the time period to appeal or seek review has expired); *United States v. Sanders*, 247 F.3d 139, 142 (4th Cir. 2001) (stating that "since [petitioner] did not file a direct appeal, his conviction became final for purposes of § 2255 subsection (1)," on the date "upon which he declined to pursue further direct appellate review"). Accordingly, to be considered timely, Sanders's Motion to Vacate needed to be filed on or before August 31, 2006. He did not file his Motion to Vacate, however, until May 13, 2013, which means that the statute of limitations bars his claim for relief.

### i. 28 U.S.C. § 2255(f)(4)

First, Sanders argues that his Motion to Vacate is timely under § 2255(f)(4), which provides a petitioner with one year to file a petition from the "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." Under Sanders's theory, *Simmons* created a new fact in support of his claim for relief. Specifically, he argues *Simmons* rendered one of the predicate state law offenses for which he was convicted no longer a felony under federal law for purposes of determining career offender status. D.E 112-2 at 3–6.

It is, of course, true that a decision vacating "a prior state conviction used to enhance a federal sentence can start the 1-year limitation period under the fourth alternative of the § 2255 rule." *Johnson v. United States*, 544 U.S. 295, 302 (2005); *United States v. Gadsen*, 332 F.3d 224 (4th Cir. 2003). But this exception is limited to circumstances in which the defendant's own conviction was vacated. *Johnson*, 544 U.S. at 304 ("This case presents the distinct issue of how soon a prisoner, successful in *his* state proceeding, must challenge the federal sentence in §

2255.") (emphasis added); *Gadsen*, 332 F.3d at 227 ("[T]he relevant 'fact' … is the fact that *Gadsen's* prior state conviction has been conclusively invalidated.") (emphasis added). As a result of the limited nature of the exception, courts have consistently held that the general change in the law effected by *Simmons* does not constitute a "fact" for the purposes of § 2255(f)(4). *See Whiteside v. United States*, 775 F.3d 180, 183 (4th Cir. 2014); *McLeod v. United States*, No. 5:12-cv-622, 2013 WL 831633, at *1 (E.D.N.C. Mar. 6, 2013); *Farmer v. United States*, No. 5:02–CR–131–BO, 2012 WL 5835524, at *1 n.1 (E.D.N.C. Nov. 16, 2012); *United States v. Hardison*, No. 4:11–CV–196–FL, 4:08–CR–77–FL–2, 2011 WL 6780783, at *2 (E.D.N.C. Dec. 27, 2011).

Here, Sanders's argument is based upon a general change in the law and not a state court decision vacating his underlying criminal convictions. Thus, Sanders cannot rely upon *Simmons* to trigger the one-year limitations period in § 2255(f)(4) that would result in his petition being filed in a timely basis.

### ii. Equitable Tolling

Next, Sanders attempts to avoid the effects of his untimely filing by relying on the doctrine of equitable tolling. D.E. 112-2 at 3–6. The United States Supreme Court has held that a petitioner is entitled to equitable tolling of AEDPA's limitations period if: (1) he has been pursuing his rights with "reasonable diligence" and (2) some extraordinary circumstance prevented him from filing his petition in a timely manner. *Holland v. Florida*, 560 U.S. 631, 649 (2010). In order to satisfy the extraordinary circumstances prong, the petitioner must show that he was subject to "(1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (quoting *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003)).

Sanders argues that the *Simmons* decision represented a change in Fourth Circuit precedent that amounted to an "extraordinary circumstance ... beyond his control." *Id.* He claims that he is entitled to equitable tolling because he did not have a viable claim prior to *Simmons* and he filed his petition as soon as practicable after the decision issued.[3] D.E. 112-2 at 5. However, the Fourth Circuit has squarely addressed and rejected this argument in *Whiteside*. In *Whiteside*, the petitioner claimed he was entitled to equitable tolling because "he was prevented from timely filing by the unfavorable precedent that would have governed his claim had he sued prior to *Simmons*." 775 F.3d at 185–86. After reviewing other cases discussing futility in the context of § 2255 claims, the Fourth Circuit concluded that "[e]quitable tolling thus may not be applied where, as here, the only impediment to timely filing was the discouragement felt by petitioner when calculating his odds of success." *Id.* at 186. Thus, Sanders's argument that he is entitled to equitable tolling on the basis of *Simmons* is without merit and his Motion to Vacate should be dismissed as untimely.

## C.     Waiver of Right to Collaterally Attack Sentence

Even if Sanders's claim could be regarded as timely, the Government contends that Sanders's Motion should be dismissed because his plea agreement contained a waiver of his right to collaterally attack his sentence, except under limited circumstances that do not apply in this case. D.E. 117 at 3–6. Sanders does not refute this assertion in his filings.

The Fourth Circuit has held that a defendant may waive the right to collaterally attack his conviction and sentence, so long as the waiver is knowing and voluntary. *United States v.*

---

[3] In addition, Sanders submitted a Supplemental Memorandum that is devoted to arguing that the Fourth Circuit's earlier opinion in *Whiteside*, 748 F.3d 541, "counsels that the miscarriage of justice he suffered as a result of an erroneously enhanced sentence overcomes his untimeliness." D.E. 121 at 3. However, as noted above, this decision was granted a rehearing en banc and later reversed in *Whiteside*, 775 F.3d 180.

*Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005). The court must enforce a waiver in a plea agreement "if it is valid and the issue appealed is within the scope of the waiver." *United States v. Copeland*, 707 F.3d 522, 528 (4th Cir. 2013), *cert. denied*, 134 S. Ct. 126 (2013). This rule applies equally to waiver of direct-appeal rights and waiver of collateral-attack rights. *Lemaster*, 403 F.3d at 220.

Typically, a petitioner will respond in one of two ways when confronted with the argument that his claims are barred by a waiver contained in a plea agreement: (1) the waiver was not entered into knowingly and voluntarily, or (2) the issues raised in the petition do not fall within the scope of the waiver. *Id.* at 220 & n.2. Resolving a dispute over the validity and scope of a § 2255 waiver typically requires the court to examine the terms of the plea agreement between the parties, transcripts from the petitioner's plea hearing and sentencing, and the nature of the claims advanced in support of the petitioner's claim for relief. "Generally, if a district court questions a defendant regarding the waiver of appellate rights during the Rule 11 colloquy and the record indicates that the defendant understood the full significance of the waiver, the waiver is valid." *Copeland*, 707 F.3d at 528 (quoting *United States v. Thornsbury*, 670 F.3d 532, 537 (4th Cir. 2012)). With respect to the scope of a plea waiver, the Fourth Circuit has held that a *Simmons* claim based upon improper sentencing enhancement falls within the scope of a plea agreement waiving the right to contest the conviction or the sentence on appeal and in a post-conviction proceeding. *Id.* at 525, 529.

Sanders signed a plea agreement that contained a provision regarding waiver of his appellate rights. Specifically, Sanders agreed "[t]o waive knowingly and expressly all rights … to appeal whatever sentence is imposed, including any issues that relate to the establishment of the advisory Guideline range." D.E. 30 ¶ 2(c). Sanders also agreed to only preserve his "right to

appeal from a sentence in excess of the applicable advisory Guideline range that is established at sentencing." *Id.* Similarly, Sanders agreed to give up "all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to 28 U.S.C. § 2255." *Id.* Finally, Sanders agreed that only claims of "ineffective assistance of counsel or prosecutorial misconduct not known to" Sanders at the time of his plea would be spared from this blanket waiver. *Id.* This plea agreement was later accepted by the court. D.E. 39.

Sanders does not argue that his waiver of right to pursue a collateral attack was not knowing and voluntary, nor does he claim that his conviction was the result of prosecutorial misconduct.[4] Instead, Sanders's claim challenges an enhancement to his sentencing guidelines range within the maximum penalty provided by statute. Thus, Sanders's *Simmons* claim falls within the scope of his plea waiver and is barred from further consideration. In these circumstances, the court must give effect to the terms of the agreement reached between Sanders and the Government by determining that he has waived his right to pursue the relief sought in the Motion to Vacate. As Sanders has waived his right to pursue relief under § 2255, all claims unrelated to his allegations of ineffective assistance should be dismissed.

### E. Ineffective Assistance of Counsel

Finally, Sanders claims that his sentence was imposed in violation of the Constitution because his appointed counsel's performance was so inadequate that it violated his right to counsel under the Sixth Amendment to the Constitution. Sanders asserts that his counsel violated his Sixth Amendment right by "not recognizing and asserting his [*Simmons*] claim

---

[4] Sanders also raises an ineffective assistance of counsel claim in connection with his *Simmons* claim. On its face, this claim falls outside the scope of his waiver, and is therefore discussed below.

earlier." D.E. 112-2 at 6 n.1. The Government seeks dismissal of Sanders's Motion because it is untimely. D.E. 133 at 3 & n.1.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right … to have the assistance of counsel for his defence." U.S. Const. amend VI. A defendant's right to assistance of counsel may be violated if his attorney fails to provide adequate legal assistance. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). This right applies at all stages of a criminal proceeding, including sentencing. *Mempa v. Rhay*, 389 U.S. 128, 134 (1967); *United States v. Burkley*, 511 F.2d 47, 51 (4th Cir. 1975).

In *Strickland*, the Supreme Court held that a petitioner must satisfy a two-pronged test to establish a claim of ineffective assistance of counsel. 466 U.S. at 686–87. First, the petitioner must show that his attorney's performance fell below an objective standard of reasonableness. *Id.* at 688. Courts must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." *Id.* at 689. Therefore, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Second, ineffective assistance claims in the context of noncapital sentencing cases require a showing that the defendant received a greater sentence than he would have, but for counsel's unprofessional errors. *See Glover v. United States*, 531 U.S. 198, 204 (2001).

For the reasons previously discussed, Sanders's Motion is untimely, and his ineffective assistance claim should be denied on these grounds. In addition, his ineffective assistance claim is meritless because, even if counsel could have asserted Sanders's *Simmons* claim earlier, his efforts would have been futile. The court will not find that an attorney provided ineffective assistance of counsel on the grounds that the attorney failed to anticipate a subsequent change in

the law.  *See United States v. McNamara*, 74 F.3d 514, 516–17 (4th Cir. 1996); *Honeycutt v. Mahoney*, 698 F.2d 213, 217 (4th Cir. 1983).  Therefore, Sanders's ineffective assistance claim should be denied.

### III.    Conclusion

Sanders's Motion to Vacate is not only untimely and not suitable for equitable tolling, but he also waived his right to collaterally appeal his sentence; in addition, his attorney rendered effective assistance in asserting Sanders's *Simmons* claim.  Therefore, the court need not consider the Government's additional alternative arguments—(1) that Sanders's *Simmons* claim is procedurally defaulted because he did not raise it on direct appeal; and (2) that Sanders's *Simmons* claim is not cognizable on collateral appeal.  D.E. 117 at 6–12.  At the time of Sanders's sentencing, the court correctly designated Sanders a career offender.  Furthermore, he was sentenced to 295 months of incarceration—a sentence well below the calculated guideline range of 360 months to life imprisonment.  Sanders fails to produce any precedent that moves the court to reconsider his valid sentence even though his claim is untimely, procedurally barred, and his attorney did not render ineffective assistance.

For the reasons discussed above, therefore, the undersigned recommends that the court deny Sanders's Motion to Vacate (D.E. 112) and grant the Government's Motion to Dismiss (D.E. 116).

The Clerk is ordered to send a copy of this Memorandum and Recommendation to Sanders.  He shall have until 14 days after service of the Memorandum and Recommendation to file written objections.  The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is made and may accept, reject, or modify the determinations in the

Case 5:05-cr-00026-BO   Document 138   Filed 11/10/15   Page 13 of 14

Memorandum and Recommendation; receive further evidence; or return the matter the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If Sanders does not file written objections to the Memorandum and Recommendation by the foregoing deadline, he will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review.  In addition, his failure to file written objections by the foregoing deadline will bar him from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. See *Wright v. Collins*, 766 F.2d 841, 846–47 (4th Cir. 1985).**

Dated: November 10, 2015

_____
ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE